## Case No. 12,375.

### SAUNDERS et al. v. HOWARD.[1]

Circuit Court, D. Connecticut. April Term, 1864.

INTERNAL REVENUE—MANUFACTURER—MERCHANT TAILOR.

[A merchant tailor, who makes clothes, exceeding $1,000 per annum in value, to order, for individual customers, although for the use of such customers, and not for resale, is a manufacturer, within the meaning of Act July 1, 1862, § 75 (12 Stat. 462), imposing an internal revenue tax of 3 per cent. on manufactures of wool, and under section 64, par. 29, providing that "any person who shall manufacture by hand or machinery and offer for sale any goods, wares and merchandise, exceeding annually the sum of $1,000, shall be regarded as a manufacturer under this act."]

[At law. Action by T. P. & H. B. Saunders against Mark Howard, as collector of internal revenue, to recover internal revenue taxes paid.]

SHIPMAN, District Judge. This suit is brought to recover back certain moneys alleged to have been illegally exacted of the plaintiffs by the defendant, as collector of internal revenue for the First district of Connecticut. No questions arise as to the amount collected, or the manner in which it was done. The whole controversy turns on the construction to be given to the act of congress approved July 1, 1862, imposing the tax. If that act embraced the business of the plaintiffs, and subjected them to the operation of the clauses relied on by the officers of the government, then no recovery can be had. If, on the other hand, the exaction was made under a mistaken view of the law, and the plaintiffs were not legally bound to pay the amount taken, then they are entitled to recover. The liability of the defendant is merely nominal, as the commissioner of internal revenue is authorized, subject to the regulations of the secretary of the treasury, to refund the amount, if erroneously assessed or collected,

---

if the same was paid under protest. For the purpose of facilitating the disposition of the case, the facts, about which there was no dispute, have been agreed on, as follows: That the defendant was collector for the district named, and that the money was paid to him as such collector. That it was paid under protest,—not voluntarily, but under legal coercion. That the plaintiffs were merchant tailors doing business within this collection district, and that they manufactured or made the articles upon which the duty was assessed, and on account of which it was paid, to order, for individual customers, for the use of such customers, and not for resale. That the value of the articles so manufactured or made by the plaintiffs, and upon which the duty was assessed, exceeded the sum of $1,000 per annum. That, if the plaintiffs are entitled to recover at all, judgment is to be entered in their favor for the sum of $526.55.

The seventy-fifth section of the act in question lays a duty or tax of 3 per cent. on manufactures of wool, and provides that, where the articles are manufactured out of fabrics which have paid a prior tax or duty, upon the manufacture of these fabrics into specific articles the 3 per cent. shall be levied only on the increased value thereof. No question arises in this case, under this distinction, as to the basis of assessment. The only point to be determined is whether or not the plaintiffs are to be deemed manufacturers, within the meaning of the act. It has been argued with great force by the plaintiffs' counsel, supported by sound authority (Atwood v. De Forest, 19 Conn. 513), that there is a plain and well known distinction between the terms "manufacturer" and "mechanic," and that the language of trade and commerce classes under the former those who manufacture goods for sale in the market generally, and, under the latter, those who merely make specific articles for customers upon the order of the latter. This doctrine cannot be successfully controverted; and were the question involved in this suit to rest upon the just distinction between these two classes of fabricators, as simply designated by these respective terms, independent of any other consideration, the plaintiffs would be entitled to judgment. But the act in question goes beyond the mere terms "manufacturer" and "mechanic," and defines what shall be understood by the former term, at least. The twenty-ninth paragraph (section 64) of the act declares that "any person who shall manufacture by hand or machinery, and offer for sale any goods, wares and merchandise. exceeding annually the sum of one thousand dollars. shall be regarded as a manufacturer under this act." Now, it will not be denied that there is a sense in which every fabricator of articles manufactures them; and he does this as well when he sells them upon, and after, a special order, as when he fabricates them first, and then sells them to whomsoever may chance to buy. Indeed, he may be said to manufacture an article or articles, in a still more restricted sense, when he makes them without ever intending to sell them, and solely for his own use. But the act in question does not use the term manufacture in this restricted sense, for it couples with the word "manufacture" the words "and offer for sale"; and the question arises whether these words mean, in this act, manufacture and sale generally, or whether they include manufactures and sales, to particular individuals, of articles upon special order, known as "custom work." No importance can be attached to the fact that the word "manufacture" precedes the words "and offer for sale"; for it is well known that a large share of goods manufactured by heavy establishments, are first ordered by customers, and subsequently made and delivered. They are often, too, ordered to be made of particular measures or dimensions. It is difficult to see any practical or legal distinction between the manufacture and sale of a suit of clothes to order, and a set of jewelry, or an equipment of farming tools, upon a like order. Still, if the act stopped here, it might be doubtful what interpretation should be given to these words. But it goes further, and fixes $1,000 as the amount of goods necessary to be produced, in a given case, before the producer becomes a manufacturer. It ignores or restricts the ordinary meaning of the term "manufacturer" by adopting an arbitrary standard for the purposes of the statute. All fabricators who make and offer for sale goods, but not of an aggregate value exceeding $1,000, are not deemed by this act manufacturers, although they may be, in point of fact, in all senses in which the term is used in business, or by the world at large. But even this would not be conclusive in favor of the claim set up by the government without a reference to the general design and object of the statute. For it does not follow, by any logical process, that, because all who manufacture, but do so to an amount less than $1,000, are not manufacturers, therefore all who fabricate more than that amount are manufacturers. The line drawn by the sum fixed is purely arbitrary. It could not, alone, establish a new definition of the terms in question, unless such an intention was clearly expressed in the act itself. It is clearly expressed that all who manufacture and offer for sale goods, but to an amount not exceeding $1,000 annually, are not manufacturers, within the meaning of the act. The definition of the term is thus far changed or narrowed by an arbitrary rule. But it is not clearly expressed that all who fabricate and offer for sale goods to customers, known as "custom work," to the amount of more than $1,000 annually, are manufacturers, even in the sense of this act.

Left at this point, the question would remain doubtful. We must therefore resort to the object which congress had in view in the enactment of the law, and determine, if we can, by the exercise of "reason and good dis-

cretion," how the statute is to be understood. This is a well-settled rule of interpretation of statutes. "When words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the objects and remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and sound discretion." 1 Kent, Comm. (9th Ed.) p. 518, and a case there cited. The object this statute had in view was to raise revenue under an inexorable and pressing exigency. As one mode of accomplishing this object, congress laid a tax or duty on business of nearly all kinds, whenever the magnitude of the business carried on by an individual was such as to warrant the inference of some considerable income from the same. To protect ordinary mechanics and small fabricators, the statute laid no tax upon those whose operations fell short of $1,000 per annum. Those of larger business were taxed. Now, it is an elementary principle of legislation touching the raising of revenue by taxation, resting upon the solid foundations of justice, that the burden shall be as uniformly distributed as possible; that those of like means and in like pecuniary condition shall pay like sums to the state for the common good. The claim of these plaintiffs, if sustained, would make the rule grossly unequal. It would leave them to pay no tax upon a large and remunerative business, while others, engaged in much less extensive operations, though of the same general character,—that is, supplying the community with necessary articles,—would be heavily taxed. It is true that courts cannot remedy the defects or supply the omissions of the legislature by making uniform that which the legislature has made unequal; but, in searching after the true interpretation of a statute on a point where the words leave the matter in doubt, they will give weight to considerations of justice and of public policy, where they harmonize with the known and obvious intention of the law, and are consonant with the fundamental rules of right and reason. There is not only no reason founded in good sense or justice why a person who makes articles to the value of more than $1,000 annually, for special customers, should be wholly exempt from taxation, while the person who makes the same articles, to the same amount, for general customers, is heavily taxed. The court cannot conclude that such was the intention of congress, when not only the words of the act do not plainly reveal such an intention, but where to attribute such an intention to that body would tend to defeat the objects and contravene the obvious policy of the law as a means of raising a uniform revenue. The conclusion, therefore, is that the plaintiffs were within the class upon which the seventy-fifth section of the act imposed a duty of 3 per cent. In coming to this conclusion, the court has not failed to consider the effect of the amendment of the twenty-ninth paragraph (section 64) of the act of July, 1, 1862, by the act of March 3, 1863 [12 Stat. 714]. As already stated the twenty-ninth paragraph (section 64) of the act of July 1, 1862, provides that any person who shall manufacture and offer for sale any goods, wares, and merchandise, exceeding annually the sum of $1,000, shall be deemed a manufacturer. By the act of March 3, 1863, this twenty-ninth paragraph was amended by inserting, after the words "merchandise," "or who shall manufacture by hand or machinery for any other person, or persons any goods, wares, or merchandise." It is suggested that these words supply an omission in the first act, by including mechanics who manufacture for individual customers to an amount exceeding $1,000 per annum, and that, therefore, it is to be assumed that they were not included in the first act. But I do not think it is clear that the omission supplied was of the precise character claimed. By coupling the words "offer for sale" with "manufacture," in the twenty-ninth paragraph (section 64) of the act of 1862, those who manufactured for others, but never sold or offered for sale, were omitted from the class of manufacturers. This was clearly an oversight, and the omission was clearly supplied by the act of March 3, 1863 (12 Stat. 714). But if the object was to include in the amendment those who manufactured and sold, not generally, but to particular customers, as these plaintiffs do, why was not plain language used? Not, I think, from oversight, for on the 717th page the same amendatory act is precise in dealing with persons of the class of the plaintiffs, for it says, "Tailors," etc., "making clothes," etc., "to order as custom work and not for sale generally, shall, to the amount of one thousand dollars be exempt from duty, and for any excess beyond the amount of one thousand dollars shall pay a duty of one per cent. ad valorem." As this very precise language was used when speaking of the class of fabricators to which these plaintiffs belong, in this part of the amendatory act, I conclude it was not used with reference to the amendment of the paragraph (section 64) of the act of July 1, 1862, but with reference to the twenty-ninth paragraph itself, in connection with the seventy-fifth section of that act. It was to exempt custom tailors, to the extent of $1,000, and reduce their duty on all amounts exceeding that sum; to exempt them. not from the operation of any part of the amendatory act of 1863, but from the effect of the twenty-ninth paragraph of the sixty-fourth section, and from the seventy-fifth section of the original act of July 1, 1862.

It follows from these views that judgment must be entered for the defendant. Let judgment be entered accordingly.